v. American Precision Industries, Inc. Mr. Hacker, I see you reserve three minutes for rebuttal. You can begin whenever you're ready. Thank you. Before you begin, I would like to put a question that's really for both sides, for clarification of something that confuses me about the terminology here. And I'd like you both to try to clarify this. I am wondering whether the terms all sums and pro rata are viewed as encompassing the question, that one of them or both are viewed as encompassing the question, whether the insured is going to be compelled to contribute to either defense costs or indemnity. Because it seems to me that those are really two separate questions. It's obviously a very important question whether the insured is going to be taxed for the time when the insured was uninsured and was viewed as a co-insurer. But it seems to me that the concepts of all sums and pro rata also involve very different considerations, and they should be separate questions, that a decision one way or the other as to whether the insured has to contribute is going to be taxed shouldn't necessarily determine whether the insured has the obligation under pro rata to determine itself how much am I going to charge to insure A, B, and C, and try to defend that and run the risk of coming up short in the end if it doesn't all work out right, as opposed to simply saying once it's determined, is the insured going to contribute? Then any one of the insurers has got to pay what has to be paid, and it's a matter to be settled among the insurers how that all divides up, which they do either amicably or by litigation. So if you would be so kind in arguing to explain what is the relationship between pro rata as opposed to all sums to this other question. Are they separate questions? So I'll get to that in that part of the argument. Yeah, I'll be sure to do that. That's absolutely fine. I would like to begin, Your Honors, with the threshold, we think, dispositive question, which is based on the premise that an insurance policy provides coverage only for lawsuits filed against parties insured by the policy. The policies here say exactly that, and every relevant case agrees. That settled completely uncontroversial rule is dispositive of this entire case. You don't have to and should not reach those allocation questions, Your Honors. The only relevant name insured on the policies at issue is API, and not one of the 706 or so lawsuits at issue was filed against API. The lawsuits instead were filed against unrelated entities, the heat transfer entities, that have no right to a defense under- I think would apply to this type of situation where it's clear that there's, I mean, let me ask you, do you agree that it's clear that there's a typographical error, that they're not typographical, but they're suing the wrong entity, an entity that didn't even exist at the time of their alleged exposure? It's clearly a mistake, right? So a couple of points. Answering the question directly, it is not clearly a mistake. Unlike in Fitzpatrick, the plaintiffs in the case have been fully aware for more than a decade now of the facts that API says are relevant, and they've not tried to name API. They haven't tried to correct the so-called mistake, and there's a reason for that, because they don't need to. They could try at any time. They could modify their complaints to name API. Right, and at that point, there would be a suit against API, and that's the relevant point, and that's why the other answer here- We're not talking about defense costs. We're not talking about, for this purpose, we're talking about providing the defense. Right, and API hasn't incurred any defense costs because they haven't been sued. That's the threshold problem with Fitzpatrick, Judge Bianco, in answer to your question. You don't even get to the question about whether somebody made a mistake, because Fitzpatrick is dealing with a situation where the named insured, there was a mistake in the facts about whether and how- He named him in his individual capacity, and they should have named him in his corporate capacity. Correct. That's very similar to this. I don't see the legal distinction between that and putting a subsidiary that didn't exist at the time of the alleged exposure, because the names are very close. They had a division. API had a division called BASCO, and they sued a subsidiary, API BASCO. It's pretty clear what happened. But the entity isn't- Why would they sue an entity that didn't exist at the time of the exposure? How could that have been intentional? I think because, I mean, I don't know whether it's intentional, but it certainly isn't a mistake that was correct in the Fitzpatrick sense, because API bears the financial responsibility for this unrelated entity's conduct. That's why they didn't need to change the lawsuit, because they named an uninsured entity. Nobody disputes. It's an undisputed fact that the entities actually sued have no rights to insurance. They have no right to insurance. API has a right to insurance. That's undisputed. But it's not named. That's not disputed. So the only way API gets insurance is if API gets named, and then you would trigger the insurance. The reason API is even here is API assumed a contractual liability to reimburse those unrelated entities for their defense costs, for their liabilities. I understand completely, but you're suggesting that even though the underlying claims allege bodily injury from the use of API's products, right? Yeah. And API retained the liability for those underlying claims, right, for those products, right? I mean, I don't know if they retained it. There's an argument that they could be held liable, but there's also an argument that heat transfer entities could be held liable. And the subsidiaries were created in 1996 long after the underlying claimants alleged that they were injured, and the subsidiaries have no potential liability for the underlying claims. It's the same as in all the cases. It's just the same, Your Honor. Everything you said was true in Napoli, a case that Judge Nardini was on. If you had pointed out they amended the complaint and just put in API as the subsidiary, you would agree. You just said defend would clearly be there, right? At that point, there would be a defense. It would have to amount to defense. There's nothing for us to defend. Why is that what Fitzpatrick called an undeserved windfall on behalf of their clients? Because there's no windfall because we never had a duty to defend these unrelated entities. They're not entitled to a defense. That's a windfall for them, right? The obligation API has to indemnify them for their defense costs is a contractual obligation. Doesn't your client know there's a reasonable possibility that there's going to be coverage here once they find out who the corrupt entity is? There will never be coverage for API in these lawsuits because API is not named. There's a reasonable possibility they're going to amend that complaint at some point, isn't there? They would have to bring it. No, not at this point because they're all settled or resolved. So that mistake will never be corrected in the sense of Fitzpatrick. But also, these lawsuits will never result in liability for API because API is not named. It's just like in Columbus-McKinnon, Your Honor. It's just like in Napoli. A number of the suits have not been settled. Is that right? I don't know the number, but most of them have been resolved or settled one way or the other. They're gone. And as for those that have been resolved, it was possible during the time that they were in litigation to have the complaint amended to name API. To have a different lawsuit against a different entity, yes. That's true. But, again, I want to be clear. Columbus-McKinnon, same thing. Napoli, same thing. 85-1034, same thing. Henkel, same thing. You had a complaint that had allegations against it. Henkel was under Pennsylvania law, and not every state law has the same holding that Fitzpatrick has. So I don't know how you can rely on Henkel. Well, because it is the same principle. Henkel, in that case— In Columbus, they said the extrinsic evidence didn't establish that they had sold the products at issue. Whereas here, the extrinsic evidence clearly establishes that the products at issue are APIs. No, with respect to that, that's not quite right. In Columbus, there was the A and B lawsuits that actually named the insured. And in that case, there was a duty to defend the insured because they were named. The whole point of the holding is in bucket C of that case, the same sort of allegations were going on, but the insured was not named. And so the court said there's no duty to defend. I have another problem with your argument. To the extent you're making your argument about these suits that have been settled, the district court has ruled, right? The district court has ruled that you are liable for those defense costs. And I don't see why this is a case on that question that we should be having this argument on an interlocutory basis. It doesn't advance the resolution of the lawsuit for us to be expressing an opinion as to whether you will be liable or not liable for defense costs on the ones that have already been settled. I can understand why there's a good reason to have an interlocutory appeal with respect to the defense costs of the ones that haven't been settled. And I think that we should resolve that to advance the district court towards the resolution. But as to the ones that have already been settled, that's just a matter of money at the end. And there's no reason for that to be before us on an interlocutory basis as opposed to at the end of the suit. With respect, your honor, I think the problem is there's no difference with respect to the duty to provide a defense whether it's been settled or not. Because API has not been sued in either the settled cases or the unsettled cases. I understand your argument. I'm just talking about whether there's an appropriate basis for us to have an interlocutory appeal of a question of how much money gets paid for the defense costs of already settled cases. All I'm saying is I think there is a problem with respect. I think there is a proper basis for an interlocutory appeal for the threshold question whether we should be here at all. This case should proceed at all because API has not been sued. And there's not one case, with all due respect, your honors, there's not one case in American jurisprudence that we have seen that they have cited. Zero. In which an insurance policy was held to provide, to require coverage for entities that were not named in the lawsuit. There's no case, you have zero cases that say that if there's an error, an obvious error in the entity being sued, that the policy shouldn't apply under New York law, notwithstanding Fitzpatrick. But Fitzpatrick doesn't extend to that. You have no case that says that. I disagree. I think Napoli, Columbus, 8544th, and I want to explain why Henkel is the same, because that's the same situation. And that's, in those cases, all of those cases, the allegations in the complaint said, you know, the unnamed defendant did bad things. They just didn't name the unnamed defendant, right? In those cases, the plaintiffs absolutely could have named the insured defendant, but did not. And in all of those cases, the court said, because the insured party wasn't sued, they have no right to a defense. Let me just follow up on Judge LaValle's question. If we were to decide the duty to defend issue, whether or not Fitzpatrick applies or not, would we necessarily need to reach the other issues in terms of the proper allocation with respect to that? And or the identification issue? Why does that material advance the litigation? So if you hold that API is not entitled to a defense because they were not sued, then that would resolve the case and you wouldn't need to reach an allocation. I'm saying you resolved it the other way. Yeah, right. If you did resolve it the other way, then the allocations would be presented to this court. Why would we need to address those at this time? Why would a material advance the litigation to address the allocation part of the case? Well, there I agree with Judge LaValle in that I think it does provide, and this is what the district court said in its certification order, that the material advance doesn't necessarily mean terminate or not terminate, it helps resolve and narrow the issues. And so I think deciding now- To help the parties settle? I mean, I'm not saying that, but that kind of thing. But narrowing the issues and setting up the ground rules going forward for what the allocation will be is presented now. I don't know what API's position will be, but I expect it's fully briefed and it would be appropriate for the court to reach those issues. And if I could say a word or two about them. I understand my time has expired, but at least I want to- Why don't you wait until your rebuttal for that, right? Okay, thank you. I have not heard any answer to the question I put you, but I'll hear from the other side and maybe you can get to it. I'm more than happy to answer it, but you'd prefer that I wait for rebuttal? Yeah, you have three minutes. Yeah, absolutely. Thank you. Okay, we'll hear from Mr. Budishine. Good afternoon, may it please the court. My name is Adam Budishine with the law firm of McArthur and English, and I represent the Cross Appellant American Precision Industries Incorporated. To address your Honor's question about the all sums versus the pro rata, there are two different methods of allocation. And under New York law, built into those methods of allocation is the question of does the policyholder contribute. Under an all sums, it is very clear the policyholder does not. Under pro rata, the policyholder may if the policyholder has periods of uninsured periods during the time frame that is at issue in the case. But they are very relevant because they do answer the question of whether or not the insured has to contribute. All sums, the insured does not. Pro rata, the insured may, depending on the factual circumstances. But there are, I mean, if that's the way they do it in New York. But there are other considerations that are involved in the difference between all sums and pro rata that would apply after there's a determination of contribution or no contribution. Because they involve a very different scenario. In one scenario, the insured, assume that it's all been decided, that either there is contribution or there isn't contribution, and we're going on from there. The two choices of pro rata or all sums are very different choices. Because under pro rata, the insured is under an obligation to set forth a pleading. I want to attribute to A, B, and C, this part 32% to A, so much percent to B, so much percent to C, and to defend those. And the insured becomes the litigant who has to defend what the insured has proposed. And it's not really the insured's business. The insured is entitled to get complete coverage from each of them, to the extent that it takes account of any contribution the insurer's on. And it's not his business, it's a dispute between the insurers, how they'll divide it up between them. And it seems to me that there are considerations in the all sums, which involves joint and several against any one of the three, and leaving it to them to settle among themselves how they divide that up. And pro rata, which as I described before, requires the insurer. Those are additional questions, important additional questions, that go beyond the question of contribution or no contribution. Isn't that right? That is correct. With respect to all sums, yes, there is no set formula for how it gets divided among the insurers. It's usually an equitable question that would be decided in the underlying case if we- It's a very complex question in a case like this, where it's exposure to asbestos. You can't just say, well, it'd be done by length of exposure. One insurer had only six months of the underlying plaintiff's exposure, whereas another one had ten years. It's not that simple, because the exposures in those different times could be of a very different sort. One of them much more toxic than the other. It has to do with breathing fumes of spray asbestos that's going on the bulkheads of a ship, as opposed to handling dry, stable material. So, I mean, it's a very complex question, and it shouldn't be the plaintiffs to have to, it shouldn't be the insured, it shouldn't be the insured's obligation as a plaintiff to determine how those three, those will be divided up amongst the defendants, it seems to me. But anyway, go ahead with your- I agree completely, your honor. That is API's position that the insured, when it's an all sums allocation, the insured is entitled to a full defense. It can select whatever carrier it wants that defense from. The court could decide, it's happened many different ways in cases. But under an all sums, absolutely we agree that the insurers have the responsibility to provide a complete defense to API, and there is no right to contribution from API. The, I guess we can start with that issue in terms of my argument with the allocation of defense costs. The policy language explicitly requires them to provide a defense. It says the insurer has the right and duty to defend. It says the insurer will pay all costs, all expenses. And the court has already ruled on that. Yes. The court has ruled that the, that with respect to defense costs, the insurers have to pay the entire thing, no contribution. That is correct, yes, and we ask this court to affirm the district court's ruling on that issue. And so our ruling one way or the other on that question is not going to advance the litigation because the district court has already decided that question. Correct, yes, that question has been decided, and if it's affirmed, then the remaining steps of the litigation can go forward. That would happen after that. And as far as those issues are involved in the question of indemnification rather than defense, those don't need to be decided now, those can be decided after the judgment. There's no reason for us to be giving an advance ruling on the indemnification when we don't know anything about this case. Case hasn't proceeded. But there have been cases that were settled in the underlying litigation where API did pay to settle the cases and they're seeking ruling on how the amounts it has already paid should be allocated, whether it is under an all sums or a pro rata basis. API takes the position that In Re Viking Pump very clearly answers the issue whenever a policy includes language that extends coverage outside the policy period, that policy is subject to an all sums. A pro rata only makes sense when an insurance policy only covers loss within its policy period. Here, the language that says the policy provides coverage for death at any time, clearly extends coverage outside the policy period under Viking Pump. It's clearly an all sums allocation for claims, I'm sorry, on policy that have similar language. The insurer's main argument against that is that death is not part of bodily injury, but the- This confuses me. If a person, if an underlying plaintiff is exposed to the insurer's asbestos during a certain period, and then becomes ill, develops mesothelioma after the policy period, there's no question that's covered, right? That's our position, yes. The insurers would disagree, but that's our position. I mean, the insurers are taking the position that there's no coverage if a person inhales the asbestos fumes, but doesn't get a diagnosis of mesothelioma until after the policy period. That they're not covered even though the illness was attributed to a period to breathing in fumes of asbestos during the time that's covered by the policy? I mean, I'll let them speak to what their position is. I don't think that's their position. Under New York law, from the time the person is first exposed up until either diagnosis or death, that's the entire period of injury. And so that injury can begin before or during a policy, and it can extend well beyond the policy as well. And in this case, there are injuries that have gone beyond the last policy was in effect in 1996, policies after that excluded coverage. Why is death any different? I mean, if there's liability of the insurers for an illness that manifests itself after the policy period, but is attributable to exposure during the policy period, what's the difference as to whether the person dies or not? It's in either case, it's the injury, the harm was caused by the exposure during the policy period. Yes, and sometimes the exposure is before the policy period as well, and the injury continues throughout triggering all the policies during the injury. And we agree that, yes, death is injury. And because the policies explicitly cover death, even if it happens after the policy period, that is why these policies are subject to an all sums allocation. Because the underlying principle of Viking Pump is if your insurance policy expressly provides coverage after the policy period ends, the policy is not subject to prorate, it's subject to an all sums allocation where you have a joint and several right to coverage from each of the policies that's triggered. And the insurers don't have a right of contribution against the policy holder. So that is under the principles as set forth in Viking Pump, which we believe are clearly applicable to this policy as well. With respect to the Fitzpatrick issue, there were a couple of statements by the insurers that I don't believe are correct. I mean, the API retained the liabilities when it created those entities. The insurers are referring to an identification agreement that came years later when they were sold. That has nothing to do with API retaining liabilities in the first instance. It never passes liabilities on to the insurers. The Fitzpatrick focuses on the underlying, the event, the occurrence, the cause, the act, the omission. It doesn't focus on who was actually named. It is the underlying event, act, or omission, something covered by the policies. And it is beyond dispute in this case that plaintiff's alleging injury from API products are covered by the insurer's policies. And I believe my time is done for the rest of the argument to rely on our papers. Thank you. All right, Mr. Hacker, you have three minutes for a vote. So to get back to Judge LaValle's question, as I think the record now is basically clear, I hope when you have all sums, the cases will treat it as an issue between the insurers. When you have pro rata, the issue arises when in the bare periods when the insurer didn't have any insurance at all, it's supposed to be assigned its pro rata share, and that applies both to indemnification and all the New York cases that have addressed it is that it also applies to defense costs. There's no case that's ever rejected that. So that's the clearest point on defense costs. I don't think this court is in a position to tell all the New York courts that have addressed it that they got it wrong. If there's any question about that, I think certification to New York Court of Appeals would be appropriate. On that threshold issue, I just want to be very clear. There's no mistake in this case in the relevant Fitzpatrick sense because the plaintiff's lawyers know they didn't need to sue API. They made a choice not to sue API because they didn't need to. That's completely different from in Fitzpatrick. They knew they didn't need to sue API because they were aware that API remained contractually liable. And it's perfectly well settled. I think your honors are all very aware that insurance doesn't cover contractual liabilities unless the policy says it does. And this policy here, the federal policy, does have a provision that allows for it, but doesn't apply here. So the only way API is trying to get heat transfers defense costs is because that's the only reason they're liable for them is through that contractual indemnification, and they don't have insurance for that. There's no mistake. People sued exactly who they wanted to sue, and they're getting exactly the recoveries they wanted to. They didn't have to sue API. So Fitzpatrick is just categorically irrelevant. I will say Henkel does apply, your honor. It applies Pennsylvania law because Pennsylvania law and Connecticut law are the same. That's what you'll see the decision saying. And Connecticut law adopts Fitzpatrick. Connecticut law is the same as New York law. So Henkel is actually applying New York law, and it's in line with all those other cases I cited, all of which are the same situation where the plaintiffs could have sued an insured defendant. And in fact, have complaints with allegations that say the insured defendant did something wrong and could be liable. They just didn't sue the insured defendant. And you won't find a case in New York or any other jurisdiction in this country that says an insurance policy can apply to cover- Why shouldn't we certify it then? Why shouldn't we certify, you have a question of whether or not Fitzpatrick applies. Viking pump, there's an argument about whether that applies or not. On the allocation issue, there's courts that have gone the other way on that issue as well. We don't object to certification. I mean, I think it's clear what Fitzpatrick says in the other cases, rejecting the kind of application API says. But I think before the court were to read Fitzpatrick the way API has in its unprecedented fashion, I think the court definitely should certify. And I think the same would be true for the indemnification question. There, I think it's equally true. There's no New York court that has ever said that the death at any time language is the same as the non-accumulation language that was at issue in Viking Pump. They just misunderstand that language. I think Judge LaValle has it right. All that language is saying is that the death is not different from, it's defining the injury to include the death and pulling the death back into the period when the injury occurred. It's not extending coverage like in the provisions at issue at Viking Pump, creating this possibility of overlapping coverage. That was the problem there. The death at any time provision does the opposite. It says we're not covering, it doesn't occur down the road. The death is attributable to the period when the injury occurred, so you don't have the problem that was presented in Viking Pump, literally the opposite. If the court were to have a different sense of that or have doubts about that, then yes, your honor, I think certification would be the appropriate outcome. All right, thank you. Thank you. We'll reserve the decision, have a good day.